IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WESTCHESTER SURPLUS                 :
LINES INSURANCE COMPANY,            :
                                    :
      Plaintiff,                    :
                                    :
vs.                                 :    CIVIL ACTION 08-0455-WS-M
                                    :
ROMAR HOUSE ASSOCIATION, INC.,      :
                                    :
      Defendant.                    :

REPORT AND RECOMMENDATION

The Motion to Dismiss filed by Defendant (Doc. 4) has been referred for report and recommendation, under 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2.  Jurisdiction has been invoked in this Court under 28 U.S.C. § 1332, pursuant to diversity jurisdiction.  After consideration, it is recommended that Defendant's motion be granted and that this action be dismissed so that it may proceed to full resolution in the parallel action pending in the Baldwin County Circuit Court.

The facts, very briefly, are as follows.  Plaintiff Westchester Surplus Lines Insurance Company (hereinafter *Westchester*), a Georgia Corporation, issued an insurance policy, to run from September 15, 2004 through September 15, 2005, to Defendant Romar House Association, Inc. (hereinafter *Romar*), an Alabama Corporation, to cover[1] Romar House, a condominium site in

---

[1]The Court will not discuss the particulars of the insurance contract as they are not relevant to the Motion to Dismiss.

Orange Beach, Alabama (Doc. 1, ¶¶ 1-2, 9).  Hurricane Ivan struck the Gulf Coast on September 16, 2004, causing damage to Romar House for which a claim was filed (*id.* at ¶¶ 11, 22).  Westchester and Romar have both had adjustors assess the damage, but the Parties have been unable to agree on the amount to be paid through the insurance policy (*id.* at ¶¶ 23-26, 28-37, 39-67).

On August 5, 2008, Plaintiff filed a Declaratory Action, pursuant to 28 U.S.C. §§ 2201-2202, claiming diversity jurisdiction under 28 U.S.C. § 1332[2] (Doc. 1).  Plaintiff seeks this Court's declaration "as to coverage, scope and causation, and appraisal" under the insurance contract (Doc. 4,[3] p. 1; *cf.* Doc. 1, ¶¶ 68-85).

On September 19, 2008, Romar filed a separate action, in the Baldwin County Circuit Court, against Westchester and Wayne Guy, the agent who sold the Westchester policy to Romar (Doc. 4, p. 1 and Exhibit A).  In that State action, Romar raised seven claims, consisting of the following five claims against Westchester: declaratory action against Westchester as to coverage, scope and causation, and appraisal under the insurance policy, breach of contract, and a claim for bad faith; Romar also raised claims of

_____

[2]The Court notes that Defendant has not challenged this Court's jurisdiction over this matter.  The Court finds that jurisdiction is appropriate as the parties are diverse and the jurisdictional amount has been satisfied.  28 U.S.C. § 1332.

[3]Any citation made to Document Four in this Report will reference the Brief filed with Defendant's Motion.

negligent failure to procure and breach of contract against Guy (Doc. 1, Exhibit A).

On September 22, 2008, Defendant filed, in this action, a Motion to Dismiss or, in the Alternative, to Stay (Doc. 4). Plaintiff has Responded to the Motion (Doc. 9) to which Defendant has Replied (Doc. 10).

In bringing its Motion, Defendant argues that this Court should abstain from ruling in this action, relying heavily on *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005), which opened its discussion of abstention with the following instruction:

> The Declaratory Judgment Act is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Wilton* [*v. Seven Falls Co.*], 515 U.S. [277,] 287 [(1995)] (citations omitted). It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 [] (1942). In fact, in cases such as this, the Supreme Court has expressed that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* at 495 []. The Supreme Court has warned that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.* This warning should be heeded.

*Ameritas*, 411 F.3d at 1330 (some citations omitted). The

*Ameritas* Court went on to set out a non-comprehensive list of guideposts for making a determination as to whether the district court should abstain from ruling in the case or not:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
> (2) whether the judgment in the federal declaratory action would settle the controversy;
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"-that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;
> (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
> (6) whether there is an alternative remedy that is better or more effective;
> (7) whether the underlying factual issues are important to an informed resolution of the case;
> (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.
> Our list is neither absolute nor is any one factor controlling; these are merely guideposts in furtherance of the Supreme Court's admonitions in *Brillhart* and *Wilton*.

*Ameritas*, 411 F.3d at 1331.  In reviewing the Parties' arguments,

they agree only that the third factor favors the federal court; Defendant does so grudgingly ("This factor points **weakly** in favor of the Court exercising jurisdiction") (Doc. 4, p. 4) (emphasis in original).  They disagree as to all other guideposts (Doc. 4, pp. 3-8; *cf.* Doc. 9, pp. 14-25), so the Court will go through them all, separately.

The first guidepost is "the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts."  The dispute in this Court concerns the interpretation of an insurance contract issued to an Alabama business; Alabama law will answer the questions raised regarding that contract.  In the State Court action, Romar has raised claims against Westchester in addition to those that mirror the claims raised here; Alabama law will supply the rule of law as to those claims.  Romar has also raised claims against a third-party, Guy, an Alabama resident which will be decided by Alabama law.  The Court finds that the Alabama Courts have a substantial interest in deciding the issues raised in this dispute.[4]

The second guidepost is "whether the judgment in the federal declaratory action would settle the controversy."  The answer to this question is no, as Romar has raised claims against Westchester in the State Court that are not raised herein.

---

[4]The Court notes Westchester's assertions concerning the number of interstate actors peripherally involved in this dispute, but finds the assertions irrelevant to the issues at hand (Doc. 9, p. 16).

Although Defendant has asserted that Alabama § 6-5-440[5] would compel Romar to raise those claims as counterclaims in this action (Doc. 9, p. 18), resolution of those claims—in whatever manner—would still not answer the claims that Romar has raised against Guy.  Though Westchester has argued that the actions against Guy "are not genuinely part of any controversy" between it and Romar (Doc. 9, p. 20), the claims exist, nevertheless, and cannot be ignored just because Plaintiff has no stake in them.[6] The Court finds that this guidepost counsels abstention.

The third guidepost is "whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue."  As noted earlier, Romar conceded this factor, though grudgingly.  The Court agrees with Defendant, though noting that the Baldwin County Circuit Court could clarify the legal relations at issue also if given the opportunity to do

---

[5]"No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party.  In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times."  *See also Ex parte Canal Ins. Co.*, 534 So.2d 582, 584 (Ala. 1988) ("It is not controverted that 'courts of this state' as used in this section includes a United States district court within this state").

[6]In spite of Westchester's assertions otherwise, the Court believes that Romar's claim against Guy for failing to procure necessary insurance coverage, in particular, is one that would best be included in an action with Westchester present as the Court does not find that Romar has conceded, in its complaint, that it does not have the "all-in" property and casualty coverage through its policy with Westchester (*see* Doc. 4, Exhibit A, ¶¶ 27-30).

The Court also notes that it appears that Romar satisfactorily rebutted Defendant's assertions that the claims against Guy were barred by the statute of limitations (Doc. 10, pp. 2-5).

so.

The fourth guidepost is "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing'-that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable." Romar has asserted that Westchester beat it in a race to the Courthouse as Romar had indicated in a letter of March 19, 2008 that it had been patient with the negotiations long enough (Doc. 4, pp. 4-6). The Court notes, though, that Plaintiff did not file this action until four-and-one-half months after the "lawsuit-threatening-letter" was written. Romar did not file its State Court action until forty-five days after this action was filed; this hardly places Defendant in a position of being poised to bring a lawsuit.[7] The Court further notes that this would appear to be a removable action as the Parties are diverse though it would be necessary for this Court to decide whether it would entertain Romar's claims against Guy. This guidepost does not counsel abstention.

Next to be considered is "whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction." The answer to this question is yes. The claims raised in this action

---

[7]The Court finds Romar's argument even less credible when one considers that it took six months to file the State action after its letter of March 19, 2008.

are, apparently, identical to some of the claims Romar has raised
in the State Court.  If this Court were to retain jurisdiction
and address the claims raised herein—as well as Romar's claims
that Westchester has argued should be turned into compulsory
counterclaims (Doc. 9, pp. 11-12, 18-19)—the State Court would
be, potentially, put into the position of staying its action to
await this Court's resolution of the dispute between Westchester
and Romar before it could contemplate Romar's claims against Guy.
This would, without doubt, cause friction between the courts and
encroach on state jurisdiction.  This guidepost favors
abstention.

The next guidepost to be considered is "whether there is an
alternative remedy that is better or more effective."  The more
efficient method of handling all of the claims that have arisen
from Hurricane Ivan's destruction is for the State Court action
to proceed to a resolution of all issues.  This is much more
efficient than a tag-team approach by the two courts to conclude
the entire dispute.

The seventh *Ameritas* factor is "whether the underlying
factual issues are important to an informed resolution of the
case."  The answer is yes.  The Court finds this factor to be
neutral, though, neither counseling for—or against—abstention.

The eighth guidepost is "whether the state trial court is in
a better position to evaluate those factual issues than is the
federal court."  The State Court is in a better position than

8

this Court to evaluate the factual issues only in the sense that it is going to have to go through that process to resolve the Romar-Guy claims.  It is more efficient for one court to undergo the fact-finding process and handle all disputes than for two courts to separately undergo the process and handle the claims piecemeal.  This factor favors abstention.

The ninth *Ameritas* factor is "whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action."  All claims relating to the separate disputes in this—and the State Court—action are matters of state law; there is no federal common or statutory law to be considered in resolving the issues.  This guidepost favors abstention.

After consideration of all of the *Ameritas* guideposts, the Court finds that abstention is appropriate in this action.  The disputes raised concern an incident occurring on Alabama soil, governed by an Alabama contract, and will be resolved by Alabama law.  All of the issues raised in this Court have been presented in the State Court action along with other claims which are not a part of this action; in other words, the State Court action can resolve all disputes while this action can not.  If this Court were to proceed on the claims before it, there would be a certain amount of disruption of the State Court action, causing friction in that proceeding.

For the reasoning set out herein, it is recommended that
this Court abstain from proceeding further with this action and
defer all further matters to the State Court for resolution.  To
that end, it is recommended that Defendant's Motion to Dismiss
or, in the Alternative, to Stay (Doc. 4) be granted[8] and that
this action be dismissed so that it may proceed to full
resolution in the Baldwin County Circuit Court.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.  **Objection**.  Any party who objects to this recommendation or
anything in it must, within ten days of the date of service of
this document, file specific written objections with the clerk of
court.  Failure to do so will bar a *de novo* determination by the
district judge of anything in the recommendation and will bar an
attack, on appeal, of the factual findings of the magistrate
judge.  See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d
736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404
(5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging
the findings and recommendations of the magistrate judge is set
out in more detail in SD ALA LR 72.4 (June 1, 1997), which
provides that:

> A party may object to a recommendation entered by a
> magistrate judge in a dispositive matter, that is, a
> matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing
> a "Statement of Objection to Magistrate Judge's
> Recommendation" within ten days after being served with
> a copy of the recommendation, unless a different time
> is established by order.  The statement of objection
> shall specify those portions of the recommendation to
> which objection is made and the basis for the
> objection.  The objecting party shall submit to the

---

[8]The Court finds dismissal appropriate in this action as all
disputes can be resolved in the State Court action.  There is no need
for this Court to stay the action for any future consideration as
there is no reason to believe that full resolution cannot, or will
not, take place in the parallel action.

district judge, at the time of filing the objection, a
brief setting forth the party's arguments that the
magistrate judge's recommendation should be reviewed *de
novo* and a different disposition made.  It is
insufficient to submit only a copy of the original
brief submitted to the magistrate judge, although a
copy of the original brief may be submitted or referred
to and incorporated into the brief in support of the
objection.  Failure to submit a brief in support of the
objection may be deemed an abandonment of the
objection.

   A magistrate judge's recommendation cannot be appealed to a
Court of Appeals; only the district judge's order or judgment can
be appealed.

2.   **Transcript (applicable where proceedings tape recorded)**.
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the
magistrate judge finds that the tapes and original records in
this action are adequate for purposes of review.  Any party
planning to object to this recommendation, but unable to pay the
fee for a transcript, is advised that a judicial determination
that transcription is necessary is required before the United
States will pay the cost of the transcript.

   DONE this 2nd day of December, 2008.


                              s/BERT W. MILLING, JR.
                              UNITED STATES MAGISTRATE JUDGE