IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WESTCHESTER SURPLUS LINES ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 08-0455-WS-M |
| ) | |
| ROMAR HOUSE ASSOCIATION, INC., ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter comes before the Court on defendant Romar House Association, Inc.'s Motion to Dismiss or, In the Alternative, to Stay (doc. 4) these proceedings. On December 2, 2008, following briefing by the parties, Magistrate Judge Cassady entered a Report and Recommendation (doc. 13) applying the framework set forth in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005), and recommending that the Motion be granted, that this Court abstain from proceeding further, and that this action be dismissed in favor of the parallel state court proceedings. Plaintiff Westchester Surplus Lines Insurance Company timely filed Objections (doc. 14), along with a 21-page Memorandum of Law (doc. 15). Defendant filed a Response (doc. 16). The Objections to the Report and Recommendation are now ripe for disposition.

**I.     Relevant Background.**

On August 5, 2008, Westchester initiated this action for declaratory judgment and other relief against Romar in this District Court. The Complaint (doc. 1), which predicated federal subject-matter jurisdiction on diversity of citizenship pursuant to 28 U.S.C. § 1332, alleged that Westchester had issued an insurance policy to Romar for a condominium development in Orange Beach, Alabama, for the period of September 2004 through September 2005. According to the Complaint, a dispute arose between the parties concerning Westchester's obligations under the policy when the insured property was damaged by Hurricane Ivan on September 16, 2004. On

that basis, Westchester sought a declaratory judgment as follows: (1) declaring that Romar's claims for recovery of unit interior damage, flood damage, and interior damage attributable to water intrusion not resulting from a covered cause of loss were not covered under the terms of the policy; (2) declaring that the additional damages claimed in Romar's First, Second and Third Supplemental Claims were not proximately caused by Hurricane Ivan and were therefore not covered by the policy; and (3) declaring that this claim cannot properly be submitted to appraisal without prior resolution of the pending coverage and causation disputes or agreement by the parties as to the issues to be resolved by the appraisal panel.

More than six weeks later, on September 19, 2008, Romar filed a separate lawsuit against Westchester and a person named Wayne Guy (who is not a party to this federal action) in the Circuit Court of Baldwin County, Alabama.[1] That complaint identifies Guy as "the agent who sold the Westchester insurance policy" to Romar, and designates him as an Alabama citizen, just as Romar is. (Doc. 4-2, at 2.) The seven-count state court complaint includes three declaratory claims against Westchester that are virtual mirror images of the declaratory claims articulated by Westchester against Romar in this federal action. In addition, Romar's complaint in state court alleges claims of breach of contract and bad faith against Westchester, as well as distinct state law claims against Guy for negligent failure to procure insurance and breach of contract. As to Guy, the Romar complaint alleges that he undertook to provide Romar with adequate insurance coverage, then failed to discharge that duty by neglecting to furnish a "code upgrade" endorsement (paying for the cost of replacement or repairs to bring covered property up to code) or an "all-in" endorsement (providing coverage for unit interior repairs). The state court complaint further asserts that Guy breached his contract with Romar to provide appropriate and adequate coverage by failing to include "code upgrade" and "all-in" endorsements in the policy documents. The state court action was not removable under § 1332 because both Romar and

---

[1] From a timing standpoint, Romar filed the state court lawsuit one business day before filing the Motion to Dismiss in this action; therefore, the state court complaint and the Rule 12(b) motion in this case appear to be a coordinated effort by Romar to supplant the pre-existing federal lawsuit with an all-encompassing state court iteration.

Guy appear to be Alabama citizens for diversity purposes.[2]

In its Motion to Dismiss the federal action, Romar argued that the filing of the overlapping state court action triggered so-called *Wilton/Brillhart* abstention principles using the multifactor test articulated by the Eleventh Circuit in *Ameritas*. After briefing, the Magistrate Judge recommended that the Motion to Dismiss be granted and that this Court exercise its discretion not to hear this declaratory action given the pendency of an overlapping but broader action in Alabama state court. Examining each of the non-exhaustive *Ameritas* guideposts, the Magistrate Judge opined that abstention was appropriate based on the following considerations: (a) Alabama courts have a substantial interest in deciding the issues raised in this dispute under Alabama law concerning an insurance policy issued to an Alabama entity through an Alabama agent to insure Alabama property; (b) judgment in the federal declaratory judgment action would not settle the entire controversy because certain of Romar's state court claims against Westchester (including, most notably, the bad faith cause of action) and all of its claims against Guy would remain, notwithstanding final disposition of this federal action; (c) allowing this federal declaratory action to proceed would undoubtedly increase friction between federal and state courts and encroach on state court jurisdiction; (d) abstaining from deciding the issues in this federal action and instead allowing the state court to resolve all pending issues involving Romar, Westchester and Guy would be more efficient than the present duplicative litigation posture; (e) the state court is better equipped to evaluate the factual issues than is this federal court because it will be undertaking such factual evaluation anyway in connection with Romar's non-removable claims against Guy and any claims by Romar against Westchester that are not and do not become part of this federal action; and (f) there are no issues of federal common or

---

[2] Westchester has filed a motion to dismiss the state court action pursuant to an Alabama statute providing that "[n]o plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, ... the pendency of the former is a good defense to the latter if commenced at different times." Ala. Code § 6-5-440; *see also Ex parte Canal Ins. Co.*, 534 So.2d 582, 585 (Ala. 1988) ("Since the matter raised in the state court complaint constitutes a compulsory counterclaim in the federal court action that was pending at the time the state court action was commenced, the statute compels dismissal of the state court action."). That motion has not been decided, but is set for hearing on January 13, 2009.

statutory law implicated by Westchester's declaratory claims against Romar, while those claims do have the requisite nexus to Alabama state law and public policy.  (*See* doc. 13.)[3]

## II.     Governing Legal Principles.

It is well-settled that the Declaratory Judgment Act is properly "understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).  Indeed, the Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant."  *Id.* at 287 (citations omitted).  As the Eleventh Circuit has observed, the Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so."  *Ameritas*, 411 F.3d at 1330.  "The desire of insurance companies ... to receive declarations in federal court on matters of purely state law has no special call on the federal forum."  *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 136 (3rd Cir. 2000).

More than 60 years ago, the Supreme Court opined that it would be both "uneconomical" and "vexatious" for a federal district court to hear a declaratory judgment action, concurrently with ongoing proceedings involving the same parties and same legal issues (not arising under federal law) in state court.  *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).  The *Brillhart* Court admonished lower courts scrupulously to avoid what it termed "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation."  *Id.*  In the wake of *Brillhart*, courts in this Circuit have long recognized that they have discretion to "decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties."  *Ven-Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982).

The sole legal issue raised by Romar's Motion to Dismiss, the Report and

---

[3] The Magistrate Judge summarized his reasoning as follows: "The disputes raised concern an incident occurring on Alabama soil, governed by an Alabama contract, and will be resolved by Alabama law.  All of the issues raised in this Court have been presented in the State Court action along with other claims which are not a part of this action; in other words, the State Court action can resolve all disputes while this action can not.  If this Court were to proceed on the claims before it, there would be a certain amount of disruption of the State Court action, causing friction in that proceeding."  (Doc. 13, at 9.)

Recommendation, and Westchester's objections to same is whether *Wilton / Brillhart* principles counsel in favor of or against the exercise of discretion to adjudicate this action in federal court despite the pendency of parallel proceedings in state court.

III.    **Westchester's Objections to the Report and Recommendation.**[4]

Westchester interposes no fewer than seven objections to the Report and Recommendation. The Court will consider each of them in turn.

A.    *Whether the Magistrate Judge Erred as to the "Interstate Actor" Issue.*

First, Westchester bristles at the Magistrate Judge's characterization in a footnote that various interstate actors are "peripherally involved" in this dispute. In that regard, Westchester points out that it is a Georgia corporation and it is intimately involved in these proceedings as a party. (Doc. 15, at 17.) This argument unfairly distorts the Magistrate Judge's footnote and blows it vastly out of proportion. Nowhere did the Report and Recommendation opine that Westchester is not a citizen of another state or that its role in this dispute is negligible. Quite obviously, this action is between citizens of diverse states. Were it not, there would be no federal jurisdiction. Contrary to Westchester's objection, the Magistrate Judge did not lose sight of that fact; rather, he was merely addressing Westchester's extensive recitation of a laundry list of witnesses from other states (*i.e.*, the public adjuster from Tennessee, the appraiser from North Carolina, the other adjuster from Pennsylvania, the building consultant from New York, etc.), to which Westchester devoted a full page of its brief and a half dozen exhibits. (*See* doc. 9, at 16 & Exhs. B through G.) As to those witnesses whose citizenship Westchester touted as being significant, the Magistrate Judge correctly observed that (a) those individuals appear peripherally involved in this dispute, and (b) the mere fact that there are bit players from other states is irrelevant to the *Wilton/Brillhart* abstention analysis. Westchester's assignment of error to this observation, and its attempt to frame same as evincing a lack of appreciation for the diversity of

---

[4] In reviewing the Report and Recommendation, the Court recognizes its statutory obligation to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). That said, the Court also hews to the principle that "[n]either the Constitution nor the statute requires a district judge to review, *de novo*, findings and recommendations that the parties themselves accept as correct." *United States v. Woodard*, 387 F.3d 1329, 1334 (11th Cir. 2004) (citation omitted).

the parties, is both unavailing and unhelpful.[5]

### B.     *Whether Alabama Has a Strong Interest.*

Next, Westchester argues that the Report and Recommendation should be overturned because it "did not address in any way, the **strength** of the Alabama state interest, particularly in comparison to the strong, if not pre-eminent, federal interest." (Doc. 15, at 17.) The Court cannot agree, for three distinct reasons. First, this *Ameritas* guidepost is properly framed as "the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts." *Ameritas*, 411 F.3d at 1331. With no citations to authority, Westchester seeks to transform this straightforward inquiry into a comparative weighting of federal and state interests. That's not what *Ameritas* says. The Magistrate Judge did not err in failing to rewrite the *Ameritas* test in the manner contemplated by Westchester. Second, it is simply not true that there is a strong or pre-eminent federal interest in having a federal court decide this dispute under Alabama law involving insurance coverage for an Alabama property loss by an Alabama entity, implicating no substantive federal law. To be sure, a federal interest exists by virtue of the diversity jurisdiction created by § 1332, but it is extreme hyperbole to suggest, as Westchester does, that an overriding federal interest in having this action decided by federal courts arises from the mere diversity of citizenship between insurer and insured and the fact that some witnesses hail from other jurisdictions. Third, Westchester's suggestion that the Report and Recommendation omits any consideration of the strength of the Alabama interest in having this matter decided in state court is misplaced. Under any reasonable reading, the Report and Recommendation sets forth in clear terms the Magistrate Judge's opinion that the state's interest is substantial, as well as the basis for that conclusion. The Court agrees with the Magistrate Judge's assessment and finds that the first *Ameritas* guidepost favors abstention.

---

[5]     What's more, Westchester candidly admitted that it "does not suggest that the interstate origins of the witnesses and parties impacted by resolution of this case diminishes the state interest in resolving the controversy." (Doc. 9, at 17.) This is essentially the very point that the Report and Recommendation was making, to which objection is now taken, to-wit: that the presence of witnesses from other states is of little import to the *Ameritas* inquiry into the substantiality of the state's interest.

### *C.     Whether a Federal Judgment would Settle the Controversy.*

Westchester also objects to the Magistrate Judge's finding as to the second *Ameritas* guidepost that judgment in the federal declaratory action would not settle the entire controversy because (a) Romar has raised bad faith and other claims against Westchester in state court that are not pending here, and (b) Romar has joined claims in state court against Guy for, *inter alia*, negligent failure to procure insurance coverage. Westchester would have this Court speculate as to what the state court might do at a future motion hearing in the parallel action. According to Westchester, the state court is likely to apply Ala. Code § 6-5-440 to dismiss all of Romar's claims against Westchester, forcing Romar to bring those claims as counterclaims in this federal action. Westchester reasons that if that happened, and if Romar were subsequently allowed to inject its dismissed state court claims against Westchester into this action as counterclaims, then a judgment by this Court would dispose of all claims between Romar and Westchester. The initial problem is that this reasoning is predicated on the "what if" of a state court ruling that may or may not happen. Neither Westchester nor this Court can know with certainty that the state court will so rule, and this Court will not presume to dictate to the Baldwin County Circuit Court that it should decide the pending motion to dismiss in a manner that most favors the exercise of federal jurisdiction here.[6] Indeed, the net effect of adopting Westchester's hypothetical reasoning would be for this Court to exert pressure on the state court to enter a particular ruling on Westchester's motion to dismiss that would minimize the future overlap of these proceedings and allow this federal action to move forward. Of course, that pressure is exactly the sort of interference, meddling and entanglement that led to the formation of the *Brillhart* doctrine more than a half century ago.

Separate and apart from its conjectural nature, there is another flaw in Westchester's assertion that this Court should decline abstention and instead assume that the state court may at

---

[6] It does not appear that Westchester ever requested that Romar's Motion to Dismiss in this action be stayed until such time as the Baldwin County Circuit Court ruled on Westchester's motion to dismiss in the parallel state court action. As a result, Westchester trades in hypotheticals and probabilities that are not indicative of the present status of the state court proceedings, and asks this Court either to assume that the state court will rule in a certain way or to announce its view that the state court ought to rule in a certain way. Neither is appropriate.

some future date dismiss all Westchester/Romar claims pending before it.  Even if that course of events played out precisely as Westchester has foretold, the claims between Romar and Guy in state court would not and could not travel to federal court because of the non-diversity of those parties.  Why is that a problem?  Simply put, it would result in piecemeal litigation, which goes to the heart of the second *Ameritas* guidepost.  This Court would be tackling the portion of this insurance dispute involving Westchester and Romar, with the state court deciding aspects of this same dispute between Romar and Guy.  In the course of those parallel lawsuits, this Court and the state court would be called upon to examine a number of identical issues.  By way of example, a common question in both sets of claims is whether the insurance policy issued by Westchester actually provided "all-in" coverage.  If this Court were to allow fractured litigation of this dispute in the manner that Westchester proposes, then both this Court and the state court would be called upon to interpret the same insurance policy to make a determination as to whether it did or did not provide for "all-in" coverage.  The certainty of redundancy, coupled with the concomitant risk of inconsistent rulings and undue interference with state court proceedings, counsels against allowing the litigation to unfold in this manner.

      The point is that a judgment in the federal declaratory action would not settle the controversy in its entirety.  For this Court to proceed here would be effectively to guarantee double-tracked litigation, with at least the Romar/Guy claims (and perhaps the Romar/ Westchester claims, depending on how the state court decides Westchester's motion to dismiss) proceeding in state court in tandem with the Westchester/Romar claims here.  As such, the Court finds no error in the Magistrate Judge's assessment that the second *Ameritas* guidepost favors abstention.[7]

---

[7]    In arguing otherwise, Westchester insists that Romar's state court claims against Guy are neither directly related to nor intertwined with this action.  The Court disagrees.  Conceptually, a focal point of Romar's dispute with Westchester is whether the insurance policy did or did not provide certain coverages.  Similarly, Romar's claims against Guy are, *inter alia*, that (a) Guy's failure to procure explicit endorsements afforded Westchester an excuse to deny coverages that were already embedded in the policy language; and (b) if the policy failed to provide certain coverages, it was the result of a breach of duty by Guy, the agent who sold the Westchester policy to Romar in the first place.  Viewed in this light, it is clear that the Romar/Guy dispute is closely related to the Romar/Westchester dispute, inasmuch as both will require, at a minimum, careful analysis of the coverages provided by the policy.  The issues

### D.      *Whether Use of a Declaratory Action would Increase Friction.*

Westchester also contests the Report and Recommendation's treatment of the fifth *Ameritas* factor, to-wit: "whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction."  411 F.3d at 1331.  The Magistrate Judge correctly noted that the pendency of identical Alabama law claims between identical parties in this declaratory action and the parallel state court action would beget inter-forum tension.  While Westchester maintains that any such friction would be illusory because the Baldwin County Circuit Court will dismiss Romar's claims against Westchester, the Court cannot presume that such dismissal will occur.  For this Court to announce its expectation that the state court will step aside and allow a federal court to adjudicate the questions of Alabama law involving the same parties and pending in both fora would, in itself, amount to gratuitous interference with the state court action.  Moreover, even if Westchester were correct that the Romar/Westchester claims will be dismissed by the state court pursuant to § 6-5-440, the overlapping factual and legal issues between the Romar/Guy claims in state court and the Westchester/Romar claims in federal court would invite conflict between the two tribunals.  It requires no great stretch of the imagination to envision a race between the two courts to decide these issues first, with the loser straining against the yoke of the winner's decision and potentially facing the unenviable catch 22 of acceding to the other court's ruling with which it disagrees or, alternatively, diverging from the other court's ruling and reaching an inconsistent result.  Either way, friction would undoubtedly be present.  The Magistrate Judge properly found

---

presented in both disputes can be most efficiently resolved in a single action, as the Magistrate Judge observes.  Additionally, to the extent that Westchester argues that Romar's claims against Guy should not be a consideration in the abstention analysis because those claims may be dismissed on various state law grounds, the Court need not and will not render advisory opinions as to the ultimate merit and viability of Romar's claims against Guy in the state court action.  As noted *supra*, to express opinions concerning the merits of Alabama legal issues pending before an Alabama court in parallel litigation would itself implicate *Wilton/Brillhart* concerns by pressuring the state court to adjudicate those issues in a manner consistent with this Court's views on Alabama law.  And if the state court disagreed, then this Court and the state court would be pitted against each other with inconsistent applications of Alabama law in the same dispute.  Moreover, the relevant inquiry for *Ameritas* purposes is not whether those state court claims are likely to be successful, but is instead whether a federal declaratory judgment would settle the controversy.  The Court echoes the Magistrate Judge's response in the negative.

that this guidepost favors abstention.

### E. Whether an Alternative Remedy is Better or More Effective.

As its next objection, Westchester protests that the Report and Recommendation misapplied the sixth *Ameritas* guidepost, which is "whether there is an alternative remedy that is better or more effective." 411 F.3d at 1331. The Magistrate Judge opined that having all of the claims arising from the Romar insurance dispute adjudicated in a single state court proceeding would be "more efficient," such that this guidepost favors abstention. Westchester criticizes this conclusion as erroneous because (a) it is conclusory, and (b) it is framed in terms of efficiency, while the actual *Ameritas* language is "better or more effective." Neither assertion has merit. Notwithstanding this objection, the Report and Recommendation was not obliged to spell out in painstaking detail the rationale governing the efficiency determination. Even if it were, the Magistrate Judge has adequately explained his reasoning, inasmuch as having one court address the insurance-related issues arising from Hurricane Ivan's damage of Romar's property is clearly more efficient than having two courts address them redundantly in an overlapping, piecemeal, splintered approach. Furthermore, Westchester's objection to the Report and Recommendation for framing the issue in terms of efficiency is unfounded, as the concepts of "better or more effective" logically embrace efficiency considerations. Westchester presents nothing other than its own unvarnished say-so to the contrary. The Court finds no error in the Magistrate Judge's application of the sixth *Ameritas* guidepost.

### F. Whether the State Court is in a Better Position to Evaluate the Facts.

With respect to the eighth *Ameritas* guidepost, which concerns whether the state court is in a better position to evaluate factual issues than is the federal court, the Report and Recommendation concluded that this factor favored abstention because the Baldwin County Circuit Court will already be immersed in the facts of this dispute by virtue of adjudicating the Romar/Guy claims, such that "[i]t is more efficient for one court to undergo the fact-finding process and handle all disputes than for two courts to separately undergo the process and handle the claims piecemeal." (Doc. 13, at 9.) The Court agrees. Westchester's contention that the Romar/Guy claims will not require the evaluation of any factual issues between Westchester and Romar is not persuasive for reasons already set forth *supra*. This *Ameritas* guidepost favors abstention.

### G.     *Whether this Case Involves an Incident on Alabama Soil.*

Lastly, Westchester takes issue with the statement in the penultimate paragraph of the Report and Recommendation that "[t]he disputes raised concern an incident occurring on Alabama soil, governed by an Alabama contract, and will be resolved by Alabama law." (Doc. 13, at 9.)  According to Westchester, the Magistrate Judge's observation concerning Alabama soil "is inaccurate and effectively ignores the diversity of citizenship of the parties and the interstate nature of the transactions between them." (Doc. 15, at 20.)  It does no such thing.  As the Court reads it, the "Alabama soil" comment in the Report and Recommendation simply sets forth the unremarkable and unambiguously accurate fact that the dispute relates to a property loss occurring in Alabama.  By that statement, the Magistrate Judge was not implying a lack of diversity or an absence of any interstate actors or conduct.  Rather, he was merely observing that, at its core, this is a case about Alabama property loss and the extent to which there is insurance coverage for that loss under Alabama law.  Irrespective of the presence of diversity of citizenship and the involvement of appraisers and consultants from other states, the Court concurs with the Magistrate Judge that Alabama courts have a much stronger interest than do the federal courts in resolving this dispute.  Westchester's objection reads far too much into an innocuous and manifestly correct observation in the Report and Recommendation.

## IV.    Conclusion.

For all of the foregoing reasons, the Court finds no error in the specific challenged findings of the Report and Recommendation, or in the overall conclusion of the Magistrate Judge that abstention is warranted in this case.  Accordingly, it is hereby **ordered** that the Report and Recommendation (doc. 13) is **adopted** and plaintiff Westchester's Objections (docs. 14, 15) to same are **overruled**.  The Motion to Dismiss (doc. 4) is **granted** and this action is **dismissed without prejudice** pursuant to *Wilton / Brillhart* abstention, to enable the parties to litigate all issues pertaining to this dispute in the parallel lawsuit currently pending in Baldwin County Circuit Court.[8]  A separate judgment will enter.

---

[8] Romar's Motion was framed as a Motion to Dismiss or, Alternatively, to Stay. Dismissal, rather than a stay, is appropriate where: (1) there is neither evidence nor suggestion that a time bar might thwart the plaintiff's attempt to bring a declaratory judgment action if the state case, for any reason, fails to resolve the matter in controversy; and (2) granting a stay might

DONE and ORDERED this 29th day of December, 2008.

s/ WILLIAM H. STEELE<br>
UNITED STATES DISTRICT JUDGE

---

create incentives for forum-shopping and piecemeal litigation, as the federal plaintiff might seek to derail litigation of the coverage claims in the state court action in hopes of litigating those matters in federal court following the lifting of the stay. *See Lexington Ins. Co. v. Rolison*, 434 F. Supp.2d 1228, 1246 (S.D. Ala. 2006). Both considerations are present here. Accordingly, in the absence of countervailing argument by plaintiff, this action will be dismissed, rather than stayed.